UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

MARK WIEDERMAN,

                        Plaintiff,

           - against -

SPARK ENERGY, INC., SPARK HOLDCO, LLC,
MAJOR ENERGY SERVICES, LLC, MAJOR
ENERGY ELECTRIC SERVICES, LLC, and
RESPOND POWER, LLC

                       Defendants

------------------------------------------------------------------- X

**Civil Action No.**

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Mark Wiederman ("Wiederman" or the "Plaintiff"), by and through his undersigned counsel, alleges upon knowledge as to himself and his own actions as well as upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is a case for breach of an employment agreement and related tortious misconduct in the energy service company ("ESCO") industry.  The Plaintiff is an accomplished, experienced and loyal business executive who consistently furthered Defendants' business goals, objectives and interests.  Defendants, however, improperly manufactured a termination "for cause" when no cause existed.  A Court has already denied Defendants' purported primary basis for claiming a "for cause" termination.  Yet, Defendants have refused to pay Plaintiff all contractual amounts owed to him in terminating "without cause."  Defendant have also engaged in actions and efforts to disparage the Plaintiff and to injure and hinder his business relationships. Plaintiff is entitled to full compensatory and consequential damages including all reasonable fees and costs as well as all necessary injunctive relief concerning Defendants' misconduct.

## THE PARTIES

2.      Plaintiff Wiederman is a domiciliary and citizen of the state of New York, residing in Suffern, New York.

3.      Defendant Spark Energy, Inc. ("Spark"), a Delaware corporation with its principal place of business in Houston, Texas, is a national ESCO.  Spark is a publicly traded company listed on NASDAQ Global under the ticker symbols "SPKE."  Spark is the sole managing member of Spark Holdco, LLC.

4.      Defendant Spark Holdco, LLC ("HoldCo") is a limited liability company organized under the laws of the State of Delaware with a principal place of business located in Houston, Texas.  The members of Spark Holdco are: (1) Spark; (2) Retailco, LLC ("Retailco"); and (3) NuDevco Retail, LLC ("NuDevco").  Retailco is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston Texas.  The sole member of Retailco is TxEx Energy Investments, LLC ("TxEx"), which is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston, Texas.  The sole member of TxEx is W. Keith Maxwell III ("Maxwell"), Spark's founder, who is a citizen of Texas.  NuDevco is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston Texas.  The sole member of NuDevco is NuDevco Retail Holdings LLC, which is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston Texas. The sole member of NuDevco Retail is Electric HoldCo, LLC, which is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston Texas.  TxEx is the sole member of Electric Holdco.  As noted, Maxwell is the sole member of TxEx.

5.     Defendant Major Energy Services, LLC ("MES") is a limited liability company organized under the laws of the State of New York with its principal place of business in Houston, Texas.  Defendant MES conducts business from a location in Orangeburg, New York in Rockland County.  Holdco holds all of the membership interests in MES.

6.     Defendant Major Energy Electric Services, LLC ("MEES") is a limited liability company organized under the laws of the State of New York with its principal place of business in Houston, Texas.  Defendant MEES conducts business from a location in Orangeburg, New York in Rockland County.  Holdco holds all of the membership interests in MEES .

7.     Defendant Respond Power, LLC ("RP") is a limited liability company organized under the laws of the State of New York with its principal place of business in Houston, Texas. Defendant RP conducts business from a location in Orangeburg, New York in Rockland County. Holdco holds all of the membership interests in RP.

8.     Defendants MES, MEES and RP are referred to collectively herein as "Major."

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over Defendants pursuant to CPLR § 1332(a)(2) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 (exclusive of interests and costs).   Plaintiff is a New York resident and citizen, and the Defendants are a Delaware corporation with a principal place of business in Texas and limited liability companies whose members are Texas and Delaware citizens.

10.     This Court has personal jurisdiction over all of the Defendants under principles of specific and general jurisdiction as each has sufficient contacts with New York.  The Defendants conduct continuous and systematic business in New York and the Defendants engaged in acts and transactions in New York specific to the events at issue in this case.

11.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because a substantial part of the actions giving rise to the claims occurred in this District.  Venue is also proper because Defendants have significant contacts in this District or their contacts in this District would be sufficient to subject them to personal jurisdiction.

## STATEMENT OF FACTS

### Wiederman is an Accomplished and Loyal Business Executive in the ESCO Industry

14.     Wiederman is an accomplished and seasoned energy industry professional who founded, built and developed Major into a successful ESCO business that supplies electricity, natural gas and other related products and services to residential consumers primarily in the northeastern part of the United States.

15.     Under Wiederman's leadership, Major attracted other talented and knowledgeable ESCO professionals with many years of experience in the industry.

16.     Wiederman grew Major into a successful regional ESCO business offering services to customers in eight states (Connecticut, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio and Pennsylvania) and the District of Columbia.

17.      With Wiederman at its helm, Major substantially expanded its business.  Between 2008 and 2015, Major's customer count increased from 12,000 to 214,000.  During that same period of time, Major's annual net income increased from $380,000 to over $12.5 million and its EBITDA from approximately $390,000 to almost $24 million.

18.     Throughout his career, Wiederman has been a devoted, benevolent, philanthropic and charitable business executive.

19.     For example, after Hurricane Harvey devastated the Houston area during the late summer of 2017 and unfortunately disrupted the lives and livelihoods of many including those at

Spark and its affiliated entities, Wiederman played a leading role in soliciting, encouraging and facilitating assistance by Spark and its employees.

**Spark's Acquisition of Major's Membership Interests**

20.     By the end of 2015, larger national ESCO businesses became interested in acquiring Major.

21.     Between November 2015 and March 2016, National Gas & Electric, LLC ("NGE"), a private ESCO solely owned by Maxwell, negotiated with Major to acquire all of Major's membership interests.  The transaction was premised upon continuing to run Major as a small cohesive private entity by the same talented personnel who had transformed Major into a successful business.

22.     In March 2016, Major entered into a Membership Interest Purchase Agreement (the "First MIPA") with NGE through which NGE purchased one hundred percent of the membership interests from Major, Wiederman and other former Major members.  The First MIPA became effective in April 2016.

23.     The First MIPA designated Wiederman as one of the "Senior Management Team" members and "Key Employees" whom NGE "would like to retain" based upon the same terms and conditions as existed prior to the transaction.  It provided that NGE would deliver to Wiederman at the closing a "New Employment Agreement" (the "Employment Agreement").

24.     In early May 2016, NGE executed a follow-up Membership Interest Purchase Agreement (the "Second MIPA") with HoldCo and its members.  Pursuant to the Second MIPA, HoldCo purchased from NGE all of Major's membership interests.  Spark, a public company, is the sole managing member of HoldCo, and is responsible for all operational, management and

administrative decisions relating to HoldCo's business including that of any of its subsidiaries, such as Major.

25.     The Second MIPA provided that HoldCo "acknowledges receipt of, and agrees that" Major is "bound by the employment agreements with members of the Senior Management Team" including Wiederman.

**The Employment Agreement**

26.     Wiederman entered into and executed that Employment Agreement with Major, effective as of April 1, 2016.

26.     The Employment Agreement is governed and construed under the laws of the State of New York.

27.     The Employment Agreement was entered into because Defendants "desire[d] to retain" Wiederman as an "executive" and specifically as Major's president "[d]uring the term of this Agreement."

28.     The Employment Agreement provides for an "Initial Term" lasting from April 1, 2016 through December 31, 2018 "unless terminated earlier." It also provides an option for "Renewal Terms," defined as one-year renewals that are automatically triggered "unless either Party provides the other with written notice of its intent not to renew this Agreement at least sixty (60) days prior to the end of the Initial Term or Renewal Term, as applicable."

29.     Section 3.2(e) allows either party to terminate the Employment Agreement "without cause." It provides that: "Either party may terminate this Agreement at any time without cause upon one hundred eighty (180) days' notice to the other party."

30.     Section 3.2(a) permits termination "[b]y the Company for cause" in two instances "upon the provision of prior witness notice to" Wiederman. Major could pursue termination "for

cause" had Wiederman "commit[ted] a material breach of any term of this Agreement" and the alleged breach was not cured within 30 days of receiving a "written notice" that "specif[ies] the nature of such breach." Absent a material breach allegation, the only way Major could terminate "for cause" is by demonstrating, pursuant to Section 3.2(a)(ii), that Wiederman had been convicted for criminal behavior or "engaged in fraud, gross misconduct, breach of fiduciary obligations, or misappropriated, stolen or embezzled funds or property from the Company."

31.    However, the Employment Agreement permits a Section 3.2(a)(ii) termination only where Wiederman is given a fair and adequate chance to defend himself. Specifically, Major can only issue a "for cause" termination where it has made the "determine[ation], in good faith, following discussion with [Wiederman] providing [Wiederman] a reasonable opportunity to explain the underlying facts and circumstances."

32.    Wiederman faithfully performed all of his responsibilities under the Employment Agreement. In fact, Spark chose to retain Wiederman as Major's president even after the Initial Term expired, extending his contract for a Renewal Term lasting through 2019.

33.    Between April 2016 and the end of March 2019, Spark leadership consistently informed Wiederman that he was performing well. Never once did anyone from Spark express disapproval or any dissatisfaction with Wiederman's performance.

34.    Spark leadership also sought and relied upon Wiederman's valuable experience and expertise for non-Major matters and benefitted from Wiederman performing extra contractual services without compensation

35.    For example, in 2018, Spark acquired the membership interests of another New York ESCO, HIKO Energy, LLC ("HIKO"). Spark relied upon Wiederman's experience,

expertise and work to integrate HIKO.  Wiederman did not receive any additional compensation
for the work he performed in connection with the HIKO transaction and other non-Major work.

**Defendants' Improper "For Cause" Termination of Wiederman**

40.     On Tuesday evening March 26, 2019, Spark's Vice President of Human
Relations, Grae Griffin ("Griffin") contacted Wiederman, erroneously claiming that Plaintiff had
purportedly violated Section 3.2(a)(ii) of the Agreement and threatening to terminate Wiederman
"for cause."

41.     Griffin accused Wiederman of intentionally deleting company files from his
computer and copying those files to an external device in October 2017 when former Major
members instituted a lawsuit against NGE and Spark (the "*Horowitz* Case").  Griffin did not
identify any other basis for seeking to terminate Wiederman.

42.     Wiederman denied that he had violated Section 3.2(a)(ii) and indicated that he
would be providing greater specificity and detail in a legal filing that was due only two weeks
later in the *Horowitz* Case.

43.     At 11 p.m. that night, Griffin sent an email to Wiederman noting their
conversation of earlier that evening.  He claimed that his phone request to Wiederman for an
explanation constituted "reasonable opportunity to explain the facts and circumstances" and he
refused to await any consideration of Wiederman's filing in the *Horowitz* Case.  Griffin issued an
ultimatum to Wiederman, stating that "if we do not hear from you by 7:00" the following
evening, "we will then evaluate the decision to formally terminate you for cause."

44.     Wiederman responded the next morning:

> You know full well that this is an issue that is the subject of a
> motion before the court in NY.  That per agreement with counsel
> for NGE and Spark, I have until April 15 to address these baseless
> claims.  I plan to address these allegations with the court by that

time and will demonstrate in those papers and to the court that I
did not engage in the gross misconduct described below.

46.     Griffin replied that Spark refused to await Wiederman's filing in the *Horowitz*

case and again accused Wiederman of "misconduct," stating that Spark "will proceed as we

deem necessary."  Griffin again made no other claim for seeking to terminate Wiederman.

47.     Wiederman emailed back to Griffin:

I'll reiterate again that I did not act in any gross misconduct.  The
company documents that you contend have been destroyed or
deleted is false.   The company related documents are in the
company[y's] possession and will be laid out in our response on or
about April 15th.

48.     Then, at 4 p.m. on March 27, Griffin indicated "I have one additional issue to

raise with you regarding your conduct as President of Major Energy."  The issue Griffin raised,

did not concern Wiederman's conduct nor did it have anything to do with Major.  Rather, Griffin

accused Saul Horowitz ("Horowitz"), in connection with the *Horowitz* Case, of making a

misrepresentation to the escrow agent that resulted in the escrow agent releasing funds.  Griffin

made no accusations against Wiederman about Horowitz' representations to and actions taken

with the escrow agent but asked about Wiederman's knowledge of Horowitz's interactions with

the escrow agent.

49.     Griffin gave Wiederman until 11 a.m. the next morning, March 28, 2019, to

respond both to the deleted files' accusation as well as the new charge surrounding Horowitz's

purported misconduct.

50.     Wiederman replied later on March 27:

As I've told Nathan [Spark's CEO and president] numerous times,
my focus was to build Major, not fight lawsuits.  Any action taken
by Saul with respect to the escrow agreement was done in his
capacity as Sellers Representative.  I have every reason to believe
that the action taken by Saul was done in accordance with his

understanding and reading of the escrow agreement and that he
believed he was acting appropriately.  I had no reason at the time
to believe otherwise.  I understand now that Spark believes that
Saul's actions were in breach of the escrow agreement and that is
an issue that will be decided by an arbitrator or court.  But again,
that action by Saul has nothing to do with me personally or
whether such action by Saul is grounds to terminate my
employment agreement for cause is unfounded.

51.     Without any further inquiry, on March 28, 2019, Nathan Kroeker ("Kroeker"),
Spark's President and CEO, sent Wiederman a "Notice of Termination for Cause."   Kroeker
stated: "this letter shall serve as notice that your Employment Agreement as well as your
employment with the Company are terminated for cause effective today."   He defined the
"Company" as the Major entities "which were acquired by (NGE) and subsequently dropped
down to Spark HoldCo, LLC."

52.     The notice does not claim any termination on grounds of breach pursuant to
Section 3.2(a)(i) of the Employment Agreement.

53.     Rather, Kroeker accused Wiederman of engaging "in actions that rise to the level
of at least gross misconduct, breach of fiduciary duty, fraud or misappropriation, which are
precluded under Section 3.2(a)(ii) of the Employment Agreement."   Kroeker repeated Griffin's
accusations about supposed intentional deletion of files and speculated incorrectly about
Wiederman's knowledge of Horowitz's representations to the escrow agent.

54.     Thus, less than 48 hours after accusing Wiederman of intentionally deleting
company files in 2017 and even less time after raising questions about Horowitz' (not
Wiederman's) representations to the escrow agent, Kroeker formally terminated Wiederman as
Major's president effective immediately.

55.     Approximately, two weeks later, Wiederman submitted an affidavit as part of a plaintiff filing in the *Horowitz* Case in which he denied Spark's deleted files accusations and demonstrated through substantial facts that the gross misconduct was incorrect.

56.     By the beginning of May, Wiederman had further denied that he had engaged in any culpable conduct and demonstrated the inaccuracy of the charges in deposition testimony and a second affidavit.

57.     On May 8, 2019, the Court in the *Horowitz* Case expressly rejected Spark's gross misconduct charge as to Wiederman.  The Court credited Wiederman's affidavit explanations and found there to be no evidence of any gross misconduct on Wiederman's part.

58.     There also is no merit to Defendants' eleventh-hour secondary accusation against Wiederman concerning purported misrepresentations made by Horowitz.  Wiederman played no part in any representations or actions taken by Horowitz with the escrow agent, which had nothing to do with Wiederman's duties and responsibilities to Major.  In addition, the Court in the *Horowitz* Case made clear that any claims about the escrow monies should be brought in arbitration between Horowitz and NGE.

59.     As a consequence, Major breached Section 3.2(a) of the Employment Agreement by terminating Wiederman's employment and the Employment Agreement purportedly "for cause" even though no cause existed.  Defendants failed to demonstrate that Wiederman acted with gross misconduct or other culpable mindset, which is needed to terminate under Section 3.2(a)(ii). Defendants also failed in good faith to provide Wiederman with reasonable opportunity to defend himself against the accusations as the Employment Agreement further requires.

60.     Defendants Spark and HoldCo were well aware of Major's contractual obligations under Wiederman's Employment Agreement and actively participated in the effort to terminate Wiederman's employment and the Employment Agreement.

**Defendants' Obligations to Wiederman for a "Without Cause" Termination**

61.     Kroeker's March 28, 2019 letter to Wiederman was a notice of termination "without cause."

62.     Pursuant to Articles 2 and 3 of his Employment Agreement, Wiederman is entitled to the full extent of compensation, benefits, severance and payments owed to him relating to a termination "without cause."

63.     Under Section 3.2(e) of the Employment Agreement, the "effective date" of Wiederman's termination would be 180 days after receiving notice on March 28, 2019 or September 24, 2019.  Therefore, Wiederman is entitled to all compensation, bonuses, benefits and payments owed to him as Major's president up through that date.

64.     Wiederman is also entitled to all of the "Payments and Benefits Following Termination" as set out in Section 3.3 of the Employment Agreement.

65.     Pursuant to Section 3.3(a), Wiederman is owed a "Severance" payment, in "an amount equal to two hundred (200%) percent of the average annual compensation," which includes "without limitation, Base Salary and any Bonus Compensation."  The Severance shall be paid to Wiederman over a 24-month period immediately following expiration.

66.     Section 3.3(b) provides that "not later than thirty days" following Wiederman's termination, Major is obligated to pay him:

> "(i) a lump sum amount equal to the sum of (Wiederman)'s unearned and unpaid salary, if any, through the effective date of expiration or termination; (ii) any bonus earned by (Wiederman) with respect to periods prior to the expiration or termination, but

not yet paid to (Wiederman) as of the effective date of expiration of termination; (iii) a prorated portion . . . of any bonus previously committed by the Company to (Wiederman) . . . (iv) any unreimbursed business and entertainment expenses); (v) any unreimbursed employee benefit expenses that are reimbursable in accordance with the Company's policies, procedures or employee benefit plans through the date of termination; and (vi) death or disability benefits, if any, under and in accordance with the Company's employee benefit plans.

66.     Moreover, in compliance with Section 3.3(c), Major is required to make additional payments to Wiederman during the "Benefits Continuation Period," which is defined as "the period beginning upon the termination or non-renewal, as applicable, of this Agreement and ending on . . . the date that is eighteen (18) months following the effective date of such expiration or termination." The Benefits Continuation Period, therefore, lasts until March 24, 2021.

67.     Under Section 3.3(c), Wiederman  is to be paid "within thirty (30) days after his termination . . . a lump sum or other agreed severance allowance in cash." Specifically, Wiederman is entitled to an additional lump sum cash payment for bonuses and benefits subject to Sections 2.2 and 2.5 of the Employment Agreement.

68.     Section 3.3(d) of the Employment Agreement makes clear that all "[p]ayments made pursuant to Section 3 hereunder are in the nature of severance and/or liquidated damages" and Wiederman "is under no obligation to mitigate these damages."

69.     Pursuant to Articles 2 and 3 of his Employment Agreement, Wiederman is owed all compensation, benefits, severance and payments in an amount of not less than $3 million.

70.     Pursuant to Section 5.12 of the Employment Agreement, Wiederman is also entitled to all "reasonable costs and expenses (including without limitation, legal fees and court costs" relating to this case.

**Defendants' Efforts at Disparaging and Injuring Wiederman**

71.     Section 3.4 of the Agreement provides that "[f]or a period of two (2) years following" Wiederman termination, Major "shall not engage in any actions that could reasonably be deemed to disparage or criticize" Wiederman, and Major "shall not engage in any other actions that injures or hinders the business opportunities of" Wiederman.

72.     Major, along with its sole member HoldCo and HoldCo's sole managing member, Spark, have engaged in actions for the purpose of disparaging and criticizing Wiederman.

73.     Major, along with its sole member HoldCo and HoldCo's sole managing member, Spark, have engaged in actions for the purpose of injuring or hindering Wiederman's business opportunities.

74.     Defendants have made disparaging and critical comments to Mr. Wiederman's new employer, Alpha Gas and Electric Company ("Alpha").

75.     Defendants have engaged in actions to injure or hinder Wiederman's business opportunities and relationships with Alpha.

76.     Upon information and belief, the Defendants have made disparaging and critical comments about Wiederman to existing and former Major employees and engaged in actions to injure and hinder Wiederman's business opportunities and relationships with those individuals.

77.     Upon information and belief, the Defendants have made disparaging and critical comments about Mr. Wiederman to others in the ESCO industry and engaged in actions to injure and hinder Wiederman's business opportunities and relationships with those individuals or entities.

78.     On May 13, 2019, Wiederman's counsel wrote to Spark leadership requesting that Defendants comply with their contractual obligations, pay Wiederman all compensation,

benefits, severance and payments owed to him under the Employment Agreement and cease disparaging Wiederman and injuring and hindering his business opportunities and relationships.

79.     Spark's counsel responded on May 16, 2019 rejecting the requests in full and introducing inaccurate and specious new accusations that further confirm Defendants' efforts and intentions to disparage Wiederman and injure and hinder his business opportunities and relationships.

80.     Spark's counsel emphasized that Defendants intend to continue injuring, damaging and hindering Wiederman's business relationships and opportunities with two of Alpha's owners.  Defendants falsely claim that those two Alpha owners are subject to Non-Competition, Non-Solicitation and Confidentiality Agreements supposedly preventing Alpha from soliciting and hiring Wiederman.  In reality (as Defendants are aware), no such restrictions apply to Alpha in the documents Spark's counsel references.  In addition, Alpha did not solicit Wiederman.  There also is no basis to Spark counsel's reckless, unsubstantiated and inaccurate accusations that Wiederman has breached the restrictive covenants in his Employment Agreement.  Wiederman has not breached any of those restrictive covenants even though such restrictions will not apply to a termination "without cause."

81.     Spark's counsel also intensified Defendants' disparagement of Wiederman.  Spark now claimed that its secondary accusation concerning Horowitz's (not Wiederman's) purported misrepresentations to the escrow agent somehow constituted fraud on Wiederman's part.  No such accusation of fraud had been made when Spark in bad faith rushed to terminate Wiederman in late March 2019, and the accusation is erroneous in any event.  Wiederman played no part in Horowitz's communications with the escrow agent.  He made no representations to the escrow agent nor did he assist Horowitz or anyone else concerning statements made and actions taken

with the escrow agent.  The Court in the *Horowitz Case* has ruled that the escrow monies dispute between the parties in that litigation should be arbitrated.  And the accusations have nothing to do with Wiederman's duties and responsibilities to Major in any event.

82.     Wiederman's focus was, as it always was throughout his time at Major, on making Major succeed to the fullest and he always performed his duties and responsibilities to Major fully and faithfully.  Defendants' increasing efforts to disparage Wiederman and interfere with his business relationships and opportunities must end.

83.     Wiederman is entitled to all compensatory, consequential and exemplary damages (including but not limited to all reasonable fees and costs associated with this case) resulting from Defendants' actions and efforts to disparage and criticize Wiederman and to injure or hinder his business relationships and opportunities.

84.     Pursuant to Section 3.4 of the Employment Agreement, Wiederman is also entitled "as a non-exclusive remedy," to all necessary injunctive relief to prevent any actions and efforts to disparage or criticize him or to injure or damage his business relationships or opportunities.

### COUNT I
### Breach of Contract
### (Against Major)

85.     Plaintiff repeats and realleges all of the allegations in the preceding paragraphs as if fully set forth herein.

86.     On or about April 1, 2016, Wiederman entered into the Employment Agreement with Major.

87.     The Employment Agreement is a valid and enforceable contract.

16

88.     Wiederman has fully performed all of his obligations under the Employment Agreement.

89.     Major has breached the Employment Agreement by improperly terminating Wiederman "for cause" without demonstrating any "for cause" basis under Section 3.2(a) of the Employment Agreement.

90.     Major also breached Section 3.2(a) of the Employment Agreement by failing to engage in good faith discussions with Wiederman and providing him with a reasonable opportunity to explain the underlying facts and circumstances.

91.     In addition, Major has breached Section 3.4 of the Employment Agreement by engaging in actions that could reasonably be deemed to disparage or criticize Wiederman and engaged in actions that injure or hinder his business opportunities.

92.     Major has failed to pay Wiederman the full amount of compensations, benefits, Severance and payments owed to him under Articles 2 and 3 of the Employment Agreement.

93.     As a direct and proximate result of Major's breaches of the Employment Agreement, Wiederman has incurred compensatory and consequential damages  Wiederman is also entitled under Section 5.12 to payment of all costs and expenses including without limitation all legal fees and court costs incurred by him in connection with this litigation.

94.     Wiederman is also entitled to all injunctive relief to prevent any continuing breach by Major of its obligations under Section 3.4 of the Employment Agreement.

### COUNT II
### Tortious Interference With Contract
### (Against Spark and Spark HoldCo)

95.     Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

96.     Wiederman and Major entered into the Employment Agreement.

97.     The Employment Agreement is a valid and enforceable contact.

98.     Defendants Spark and Spark HoldCo knew of the Employment Agreement and its terms. In the Second MIPA dated May 2016, Spark HoldCo acknowledged receipt of and agreed that Major was to be bound by the terms of Wiederman's Employment Agreement.

99.     As has been detailed in preceding allegations, Defendant Major has breached the Employment Agreement including but not limited to improperly terminating Wiederman "for cause" when no such cause exists, failing to engage in good faith discussions and to provide Wiederman with a reasonable opportunity to explain the underlying facts and circumstances, and engaging in actions that could reasonably be deemed to disparage or criticize or that could injure or hinder Wiederman's business opportunities

100.     Defendants Spark and Spark HoldCo actively and affirmatively took steps to induce or cause Major to breach the Employment Agreement and injure Wiederman.

101.     As a direct and proximate result of Defendants Spark and Spark HoldCo tortiously interfering with Defendant Major's contractual obligations, Wiederman has sustained compensatory and consequential damages.

102.     As a direct and proximate result of Defendants Spark and Spark HoldCo tortiously interfering with Defendant Major's contractual obligations, Wiederman is entitled to exemplary damages as well as all attorneys' fees and costs.

103.     Wiederman is also entitled to all injunctive relief to prevent any continuing actions taken by Defendants Spark and Spark HoldCo to disparage or criticize Wiederman and to injure or hinder Wiederman's business opportunities.

### COUNT III
### Unjust Enrichment
### (Against All Defendants)

104.   Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

105.   Defendants have required Wiederman to perform services and functions not provided in his Employment Agreement including but not limited to requiring Wiederman to work on integrating another ESCO business (HIKO) after it was acquired by Spark.

106.   Defendants have not compensated Wiederman for these extra contractual services and functions.

107.   Defendants have been unjustly enriched by not compensating Wiederman for the extra-contractual services and functions he has performed.

108.   Defendants' unjust enrichment was at Wiederman's expense and it is against equity and good conscience to permit Defendants to retain these unjustly enriched amounts.

109.   As a direct and proximate result of Defendants' unjust enrichment, Wiederman has sustained compensatory and consequential damages.

110.   As a direct and proximate result of Defendants' unjust enrichment, Wiederman is entitled to exemplary damages as well as all attorneys' fees and costs.

### COUNT IV
### Tortious Interference with Business Relations
### (Against All Defendants)

111.   Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

112.    Wiederman has had business relationships with various third parties in the ESCO business including other ESCO companies, ESCO professionals, ESCO customers and ESCO vendors.

113.    Wiederman has and has expectations of continued business with these businesses, professionals, customers and vendors.

114.    Defendants have knowledge of Wiederman's business relations.

115.    Defendants have willfully, intentionally and maliciously interfered with Wiederman's business relations including but not limited to the business relationships with Alpha, current Major employees and former Major employees.

116.    Defendants have made misrepresentations about Wiederman and engaged in other wrongful means for the purpose of interfering Wiederman's business relationships with third parties.

117.    As a direct and proximate result of Defendants' actions and misconduct, Defendants have tortiously interfered with Wiederman's business relations and business expectations.

118.    Wiederman has sustained compensatory and consequential damages resulting from Defendants' tortious interference with Wiederman's business relations and business expectations.

119.    Wiederman is also entitled to attorneys' fees and costs as well as exemplary damages resulting from Defendants' misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Wiederman respectfully requests that the Court:

      a.      award Wiederman compensatory damages, including prejudgment interest and post-judgment interest, in an amount to be proven at trial;

b.  award Wiederman all consequential damages, including prejudgment interest and post-judgment interest, in an amount to be proven at trial;

c.  award Wiederman all reasonable costs and expenses including without limitation all legal fees and court costs that Wiederman incurred in connection with this case

d.  award Wiederman all exemplary and/or punitive damage resulting from Defendants' misconduct;

e.  issue all necessary injunctive relief to prevent Defendants from engaging in any actions that could reasonably be deemed to disparage or criticize Wiederman;

f.  issue all necessary injunctive relief to prevent Defendants from engaging in any actions that could injure or hinder Wiederman's business opportunities and relationships; and

g.  award Wiederman such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Wiederman demands a jury trial of all issues so triable.

Dated: May 17, 2019
New York, New York

**KAPLAN RICE LLP**

By: _____
    Daniel D. Edelman

142 West 57th Street, Suite 4A
New York, New York 10019
Tel: (212) 235-0300

*Attorneys for Plaintiff Mark Wiederman*