UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK WIEDERMAN,

                    Plaintiff,

      v.

SPARK ENERGY, INC., SPARK
HOLDCO, LLC, MAJOR ENERGY
SERVICES, LLC, MAJOR ENERGY
ELECTRIC SERVICES, LLC, and
RESPOND POWER, LLC,

                    Defendants.

**ORDER**

19 Civ. 4564 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Mark Wiederman asserts a breach of contract claim against Defendants

Spark Energy, Inc., Spark HoldCo, LLC ("HoldCo"), and Major Energy Services, LLC, Major

Energy Electric Services, LLC, and Respond Power, LLC (collectively, the "Major LLCs").

(Am. Cmplt. (Dkt. No. 37) ¶¶ 98-115)  Plaintiff also asserts a tortious interference claim against

defendants Spark Energy and HoldCo (the "Spark Entities").  (Id. ¶¶ 116-124)

        Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6).  (Def. Br. (Dkt.

No. 41))  The Hon. Deborah Batts – to whom this case was previously assigned[1] – referred

Defendants' motion to Magistrate Judge Debra Freeman for a Report and Recommendation

("R&R").  (Dkt. No. 47)  On March 9, 2020, Judge Freeman issued an R&R recommending that

Defendants' motion be:  (1) denied as to Plaintiff's breach of contract claim against the Major

LLCs; (2) granted as to the breach of contract claim against Spark Energy and HoldCo; (3)

denied as to Plaintiff's tortious interference claim against Spark Energy and HoldCo; and (4)

---

[1]  This case was reassigned to this Court on February 20, 2020.

granted as to Plaintiff's claim for punitive damages.  (R&R (Dkt. No. 49) at 27-28)[2]  Judge

Freeman's R&R will be adopted as set forth below.

## BACKGROUND

I.  **FACTS**[3]

Plaintiff alleges that he "founded, built and developed" the Major LLCs, which

operate in the energy service company ("ESCO") industry.  (Am. Cmplt. (Dkt. No. 37) ¶¶ 1, 13)

Larger ESCO entities became interested in acquiring the Major LLCs (id. ¶ 19), and in 2016,

non-party National Gas & Electric, LLC – an ESCO owned by W. Keith Maxwell, III –

purchased the Major LLCs.  (R&R (Dkt. No. 49) at 2 (citing Am. Cmplt. (Dkt. No. 37) ¶¶ 19-

22))  Under the terms of the purchase agreement ("First Purchase Agreement"), Plaintiff and

other members of the Major LLCs sold their interests to National Gas, which became the sole

owner of the Major LLCs.  (Am. Cmplt. (Dkt. No. 37) ¶¶ 22, 26)

According to Plaintiff, the National Gas sale "was premised upon [the Major

LLCs'] existing senior management team and key personnel continuing to run [the Major LLCs]

as a small cohesive private entity."  (Id. ¶ 21)  Under the terms of the First Purchase Agreement,

National Gas agreed that it would "cause [the Major LLCs] to enter into [an] employment

agreement with . . . [Plaintiff]."  (Id. ¶ 24)

---

[2]  Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

[3]  The parties have not objected to Judge Freeman's recitation of the alleged facts.  Accordingly, this Court adopts her account of the alleged facts in full.  See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

In April 2016, Plaintiff entered into such an agreement with the Major LLCs (the "Employment Agreement"). (Id. ¶ 27; see also Employment Agreement (Dkt. No. 45-2)) The Employment Agreement provides that Plaintiff will serve as the Major LLCs' President through 2018, with his position automatically renewing for successive one-year terms, absent notice from either side of an intention not to renew. (Am. Cmplt. (Dkt. No. 37) ¶¶ 37-38; Employment Agreement (Dkt. No. 45-2) §§ 1.1, 3.1)

Under the terms of the Employment Agreement, Plaintiff's employment is subject to termination with or without cause. (See Employment Agreement (Dkt. No. 45-2) § 3.2; Am. Cmplt. (Dkt. No. 37) ¶¶ 39-41) If terminated without cause, Plaintiff is entitled to certain benefits, including unpaid bonuses, unpaid salary, and a severance package. (See id. § 3.3; see also Am. Cmplt. (Dkt. No. 37) ¶¶ 87-97)

Under Section 3.2(a) of the Employment Agreement, Plaintiff may be terminated "for cause" only where

> (i) [Plaintiff] commits a material breach of any term or provision of this agreement, and such breach is not cured by [Plaintiff] within thirty (30) days . . . ; or
>
> (ii) The [Major LLCs] determine[], in good faith, following discussions with [Plaintiff] providing [Plaintiff] a reasonable opportunity to explain the underlying facts and circumstances, that [Plaintiff] has engaged in any of the following actions (provided that the notice of termination shall specify the facts and circumstances giving rise to the termination): (A) [Plaintiff] has engaged in fraud, gross misconduct, breach of fiduciary obligations, or misappropriated, stolen or embezzled funds or property from the [Major LLCs], or (B) [Plaintiff] has been convicted of a felony or entered a felony plea of "nolo [contendere]" or [Plaintiff] has been convicted of a first degree misdemeanor or entered a plea of "nolo [contendere]" to a first degree misdemeanor, which, in the reasonable opinion of the [Major LLCs], bring[] [Plaintiff] into disrepute or is likely to cause material harm to the [Major LLCs'] business, customer or supplier relations, financial condition or prospects, such as, for example and without limitation, a crime of moral turpitude.

(Id. § 3.2(a)(i)-(ii); see Am. Cmplt. (Dkt. No. 37) ¶¶ 40-41)

In May 2016, National Gas purported to sell its interests in the Major LLCs to Defendant HoldCo, another limited liability company affiliated with Maxwell.[4] (Am. Cmplt. (Dkt. No. 37) ¶¶ 3-4, 9, 28) Under the terms of the purchase agreement ("Second Purchase Agreement"), HoldCo "assumed all responsibilities and obligations toward the former Major [LLCs'] members," including Plaintiff. (Id. ¶ 28) Spark Energy was HoldCo's "managing member," which made it "responsible for all operational, management and administrative decisions relating to HoldCo's business." (Id. ¶¶ 3-4, 31) Spark Energy was named as a party to the Second Purchase Agreement, but its role was "primarily that of a guarantor"; it did not obtain any direct ownership interest in the Major LLCs. (Id. ¶ 29)

On March 26, 2019, Plaintiff received an email from Grae Griffin. (Id. ¶ 46) In his email, Griffin identified himself as the Vice President of Human Relations for NuDevco, LLC – one of HoldCo's three members. (Id.) Griffin has elsewhere identified himself as the Vice President of Human Resources for Spark Energy. (Id.) In his March 26, 2019 email, Griffin threatens to terminate Plaintiff for cause pursuant to Section 3.2(a)(ii) of the Employment Agreement. (Id. ¶ 47) Griffin claims that Plaintiff "delet[ed] 'Company' files from his computer and cop[ied] those files to an external device in October 2017 when the Horowitz Case was instituted." (Id. ¶¶ 47-48; see also supra n.4) Plaintiff denied Griffin's allegations, and stated that he intended to address them in a forthcoming submission in Horowitz. (Am. Cmplt. (Dkt. No. 37) ¶¶ 51-52)

Griffin responded that he was "not interested" in Plaintiff's submission in Horowitz (id. ¶¶ 52), and sent Plaintiff a "Notice of Termination for Cause" on March 28, 2019,

---

[4] Former members of the Major LLCs – including Plaintiff – have brought a separate action in this District challenging the validity of the sale. See Horowitz v. National Gas & Electric, LLC, 17 Civ. 7742 (JPO). (R&R (Dkt. No. 49) at 6 n.2)

which effectuated his termination that day.  (Id. ¶¶ 57, 60)  The termination notice asserts that Plaintiff "engag[ed] 'in actions that rise to the level of at least gross misconduct, breach of fiduciary duty, fraud or misappropriation, which are precluded under Section 3.2(a)(ii) of the Employment Agreement.'"  (Id. ¶ 62)  The termination notice is printed on the letterhead of the Major LLCs, and is signed by Nathan Kroeker, who identifies himself as the Major LLCs' "President and CEO."  (Id. ¶¶ 58-59)  According to Plaintiff, Kroeker does not hold these positions with the Major LLCs; instead, he "was and remains Spark [Energy]'s President and CEO."  (Id. ¶ 59)

The Amended Complaint asserts that "Defendants have engaged in actions for the purpose of disparaging and criticizing [him] and to injure and hinder [his] business opportunities."  (Id. ¶ 73)  For example, Defendants have falsely accused him of "breach[ing] restrictive covenants in the . . . Employment Agreement that prohibit disclosure of [the Major LLCs'] confidential information and that restrict solicitation of [the Major LLCs'] customers."  (Id. ¶ 74)

On April 16, 2019, less than a month after Plaintiff's termination, C. Alexis Keene sent him a letter "on Major Energy stationery that was copied to [Plaintiff's] new employer, Alpha Gas and Electric Company."  (Id. ¶ 75)  In the letter, Keene identifies herself as the Major LLCs' Interim General Counsel and Corporate Secretary.  (Id.)  Her cover email to Plaintiff – through which Keene transmitted the letter – identified her as the Interim General Counsel and Corporate Secretary of Spark Energy, however.  (Id.)

Keene's letter attaches a copy of the Employment Agreement, and states "that, since '[Plaintiff has] obtained employment with a competitor,'" the letter is being sent to "remind [Plaintiff] of [his] continuing obligations under" the Employment Agreement.  (Id.)

Keene does not assert that Plaintiff had violated any particular obligation under the Employment Agreement.  (Id.)

Plaintiff subsequently demanded that Spark Energy (1) pay him the compensation and benefits that he was owed for a termination without cause; and (2) cease disparaging him and injuring and hindering his business opportunities and relationships.  (Id. ¶¶ 76-77)  Spark Energy rejected Plaintiff's demands "in full."  (Id. ¶ 77)  According to Plaintiff, Spark Energy later accused Plaintiff of "fraud" and made "unsubstantiated," "inaccurate," and "disparaging" claims that he has improperly retained property of the Major LLCs.  (Id. ¶¶ 78, 80)  Plaintiff also alleges, upon information and belief, that Defendants have made "disparaging and critical comments" about him to, "among others, employees, suppliers, customers and marketers."  (Id. ¶ 81)

## II.     PROCEDURAL HISTORY

### A.     Amended Complaint and Motion to Dismiss

This action was commenced on May 17, 2019.  (Dkt. No.1)  The Amended Complaint, which was filed on August 8, 2019, asserts that the Major LLCs breached the Employment Agreement by (1) terminating Plaintiff "for cause" without a basis for doing so under Section 3.2(a) of the Employment Agreement, and without first engaging in good-faith discussions and providing Plaintiff with a reasonable opportunity to explain his alleged misconduct; and (2) engaging in conduct that violates the Employment Agreement's non-disparagement clause.  (Am. Cmplt. (Dkt. No. 37) ¶¶ 101-03)  Plaintiff also asserts a breach of contract claim against Spark Energy and HoldCo "to the extent the . . . Employment Agreement or any rights or obligations therein were assigned or delegated to" them.  (Id. ¶ 110).

In the alternative, Plaintiff claims that Spark Energy and HoldCo have tortiously interfered with the Employment Agreement (id. ¶¶ 116-24) by "actively, affirmatively and maliciously [taking] steps to induce or cause [the Major LLCs] to breach the . . . Employment Agreement and injure [Plaintiff]."  (Id. ¶ 121)  Plaintiff seeks punitive damages on his tortious interference claim.  (Id. ¶ 123)

On August 22, 2019, Defendants moved to dismiss the Amended Complaint. (Def. Br. (Dkt. No. 41))  On November 14, 2019, Judge Batts referred the motion to Judge Freeman for an R&R.  (Dkt. No. 47)  Judge Freeman issued her R&R on March 9, 2020.  (R&R (Dkt. No. 49))

**B.    Judge Freeman's R&R**

Judge Freeman recommends that Defendants' motion be (1) denied as to the contract claim against the Major LLCs; (2) granted without prejudice to replead as to the contract claim against Spark Energy and HoldCo, (3) denied as to the tortious interference claim against Spark Energy and HoldCo, and (4) granted with prejudice as to Plaintiff's claim for punitive damages.  (R&R (Dkt. No. 49) at 27-28)

**1.    Plaintiff's Contract Claim Against the Major LLCs**

Plaintiff claims that the Major LLCs breached the Employment Agreement by terminating him for cause without demonstrating a basis for doing so under Section 3.2(a) of the Employment Agreement.  (Am. Cmplt. (Dkt. No. 37) ¶ 101)

As noted by Judge Freeman, the elements of a breach of contract claim under New York law are "'(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.'"  (R&R (Dkt. No. 49) at 13 (quoting Swan Media Grp., Inc. v. Staub, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012)))

The Major LLCs argue that the third element is not satisfied here, because the Amended Complaint does not allege that any Major LLC employee acted in breach of the Employment Agreement. (Def. Br. (Dkt. No. 41) at 7-9) Judge Freeman found this argument "unpersuasive," noting that Nathan Kroeker had executed the notice of termination on the letterhead of the Major LLCs and on behalf of the Major LLCs, and while identifying himself as the Major LLCs' "President and CEO." (R&R (Dkt. No. 49) at 14 (citing Am. Cmplt. (Dkt. No. 37) ¶¶ 58-59)) Plaintiff also alleges that Grae Griffin threatened to terminate Plaintiff – pursuant to Plaintiff's agreement with the Major LLCs – for deleting and copying "Company" files, which, in context, appears to mean Major LLC files. (Id. (citing Am. Cmplt. (Dkt. No. 37) ¶¶ 46-48)) Judge Freeman found that even if discovery reveals that Kroeker and Griffin lacked actual authority to carry out these actions on behalf of the Major LLCs, "Plaintiff has plausibly pleaded that they undertook to act on behalf of those companies . . . , and that they succeeded in that effort." (Id.) Judge Freeman went on to conclude that Plaintiff had plausibly pleaded that the Major LLCs had breached the Employment Agreement, and that the Major LLCs' motion to dismiss Plaintiff's breach of contract claim should be denied. (Id. at 16 (citing Mosaic Legends LLC v. Millenia Partners, LLC, No. 09cv10310 (BSJ), 2010 WL 11668189, at *2 (S.D.N.Y. May 26, 2010) (denying motion to dismiss contract claim where "[p]laintiff ha[d] put forth some evidence that [an individual purportedly acting on behalf of defendant] exercised actual, implied, or apparent authority which the Defendant ha[d] not irrefutably rebutted at this stage of the proceedings"); Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metal Trading Co., 179 F. Supp. 2d 118, 148 (S.D.N.Y. 2000) ("The existence of apparent authority is normally a question of fact. . . .") (internal quotation marks and citation omitted)))

### 2.      Plaintiff's Contract Claim Against Spark Energy and HoldCo

Plaintiff asserts a breach of contract claim against defendants Spark Energy and HoldCo "to the extent the . . . Employment Agreement or any rights or obligations therein were assigned or delegated to [them]." (Am. Cmplt. (Dkt. No. 37) ¶ 110) As Judge Freeman notes, however, the Amended Complaint alleges that the Employment Agreement was between Plaintiff and the Major LLCs – not the Spark entities. (R&R (Dkt. No. 49) at 17) It "'is black letter law that non-parties [to a contract] ordinarily cannot be held liable for a breach of contract.'" (Id. (quoting Rennaker Co. Consulting, Inc. v. TLM Grp., LLC, No. 16 Civ. 3787 (DAB), 2017 WL 2304302, at *2 (S.D.N.Y. May 18, 2017)) While there are limited exceptions to this rule, a plaintiff invoking these exceptions carries a "'heavy burden,'" and Judge Freeman found that Plaintiff had not pleaded facts sufficient to warrant the application of any exception. (Id. (quoting Ixe Banco, S.A. v. MBNA America Bank, N.A., No. 07cv0432 (LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008)))

One such exception applies where a "'plaintiff can show that the parent corporation exercised complete domination of the subsidiary corporation in respect to the transaction attacked.'" (Id. (quoting IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 403-04 (S.D.N.Y. 2009))) Here, the Amended Complaint alleges that Holdco acquired the Major LLCs; that Spark Energy is a managing member of Holdco; and that W. Keith Maxwell is affiliated with the Spark Entities and the Major LLCs. (R&R (Dkt. No. 49) at 17-18 (citing Am. Cmplt. (Dkt. No. 37) ¶¶ 3-7, 33)) Judge Freeman concludes, however, that the Amended Complaint does "not come close to alleging facts sufficient to plead that" the Spark Entities exercise complete dominion over the Major LCCs. (Id. at 18)

Plaintiff argues that the Employment Agreement is binding on "'legal representatives, successors and permitted assigns,'" and that the Spark Entities are liable as successors to the agreement. (Pltf. Opp. (Dkt. No. 44) at 18 (quoting Employment Agreement (Dkt. No. 45-2) § 5.3)) Even assuming that the Spark Entities are successors to the Major LLCs,[5] Judge Freeman found no evidence that the Spark Entities "assumed" any obligations under the Employment Agreement. (R&R (Dkt. No. 49) at 19) As the R&R notes, "[u]nder New York law, even an assignee of rights under a contract will not be not bound by the assignor's obligations under that . . . contract 'unless [the assignee] expressly assumes to do so.'" (Id. at 19-20 (quoting IMG Fragrance, 679 F. Supp. 2d at 404-05)) Here, the Amended Complaint alleges no facts suggesting that the Spark Entities expressly agreed to assume the Major LLCs' obligations under the Employment Agreement. (Id. at 20) To the contrary, the Amended Complaint alleges that under the Second Purchase Agreement, Holdco "'agree[d] that the [Major LLCs]'" would be "'bound'" by the Employment Agreement, and that salary payments due under the Employment Agreement would be "'the responsibility of the [Major LLCs].'" (Id. (quoting Am. Cmplt. (Dkt. No. 37) ¶ 31))

Because the Amended Complaint does not plead that the Spark Entities (1) are parties to the Employment Agreement; (2) exercise complete dominion over the Major LLCs; or (3) expressly assumed the Major LLCs' obligations under the Employment Agreement, Judge Freeman recommends that the Spark Entities' motion to dismiss Plaintiff's breach of contract claim be granted. (R&R (Dkt. No. 49) at 20)

---

[5] Judge Freeman questioned that this was so, given that the Major LLCs were initially acquired by National Gas, not by the Spark Entities. (R&R (Dkt. No. 49) at 19)

### C. Tortious Interference Claim Against Spark Energy and HoldCo

Plaintiff alleges that Spark Energy and HoldCo tortiously interfered with the Major LLCs' contractual obligations by "actively, affirmatively and maliciously tak[ing] steps to induce or cause" the Major LLCs' breach the Employment Agreement. (Am. Cmplt. (Dkt. No. 37) ¶ 121)

As noted by Judge Freeman, "the elements of a claim for tortious interference with contract are: (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" (R&R (Dkt. No. 49) at 21 (quoting Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006))

The Spark Entities contend that Plaintiff's tortious interference claim fails because (1) it is duplicative of Plaintiff's breach of contract claim; and (2) a party cannot tortiously interfere with its own contract. (Def. Br. (Dkt. No. 41) at 11-13 (citing Choquette v. Motor Info. Sys., Inc., No. 15 Civ. 9338, 2017 WL 3309730, at *6 (S.D.N.Y. Aug. 2, 2017) ("Tortious interference claims that are duplicative of contract claims are precluded."); Koret, Inc. v. Christian Dior, S.A., 161 A.D.2d 156, 157 (1st Dep't 1990) ("It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with contract . . . .")))

Here, Judge Freeman found that Plaintiff's tortious interference claim against the Spark Entities is not duplicative of his breach of contract claim, because the Amended Complaint does not plausibly allege a contract claim against the Spark Entities. (Id. at 21-22) As to the

Spark Entities' argument that a party cannot tortiously interfere with its own contract, Judge

Freeman found that the Spark Entities are not parties to the Employment Agreement.  (Id. at 22)

Judge Freeman concludes that the Amended Complaint's factual allegations are

sufficient to state a plausible claim for tortious interference.  Plaintiff alleges that Spark Energy

officers Kroeker and Griffin – with knowledge of the Employment Agreement – unjustifiably

and intentionally took steps to cause the Major LLCs to breach their contractual obligations

under that agreement.  (Id.)  Judge Freeman found that the "fair implication of Plaintiff's

pleading is that" these individuals "took actions directed against Plaintiff within the scope of

[Spark Energy's] role as the managing member of HoldCo."[6]  (Id. at 23-24)  "Under New York

law, 'where management of an LLC is vested in a manager, the acts of the manager are binding

upon the LLC unless the manager at issue has in fact no authority to act for the LLC. . . .'"  (Id.

at 23 (quoting Pasquarella v. 1525 William Street, LLC, 120 A.D.3d 982, 984 (4th Dep't 2014))

Judge Freeman therefore found that the actions of the Spark Energy officers could prove to be

"binding on HoldCo."  (Id. at 23-24)

Finally, Defendants argue that the Spark Entities cannot not be liable for tortious

interference given that Plaintiff has alleged that the Spark Entities are "parent entities" of the

Major LLCs.  (Def. Br. (Dkt. No. 41) at 13; see also Def. Reply (Dkt. No. 46) at 10 (citing

Levinson v. Primedia Inc., No. 02-CIV-2222, 2007 WL 2298406, at *11 (S.D.N.Y. Aug. 9,

2007) ("Generally in New York, parent corporations may not tortiously interfere with their

subsidiaries' contracts.")))

---

[6]  This appears plausible given that HoldCo "'assumed all responsibilities and obligations toward
the former Major [LLCs'] members,' including Plaintiff," when it purported to acquire the Major
LLCs' membership interests through the Second Purchase Agreement.  (R&R (Dkt. No. 49) at 5-
6 (citing Am. Cmplt. (Dkt. No. 37) ¶¶ 3-4, 28))

Judge Freeman rejects this argument, in part because the Amended Complaint does not assert that Spark Energy is a parent of the Major LLCs.  (R&R (Dkt. No. 49) at 24 (citing Am. Cmplt. (Dkt. No. 37) ¶ 29))  Although the Amended Complaint pleads that HoldCo purported to acquire the Major LLCs, Plaintiff alleges that HoldCo's purchase of the Major LLCs is invalid.  (R&R (Dkt. No. 49) at 24; <u>see also supra</u> n.4)  For these reasons, Judge Freeman finds that it would be inappropriate to dismiss Plaintiff's tortious interference claim at the pleadings stage, and recommends that Spark Entities' motion to dismiss the tortious interference claim be denied.  (R&R (Dkt. No. 49) at 26)

### D.      **Punitive Damages**

Judge Freeman recommends that Plaintiff's claim for punitive damages on his tortious interference claim be dismissed, finding that the Amended Complaint does not plead facts that would warrant such relief.  (<u>Id.</u>)  Judge Freeman notes that "New York law permits a plaintiff to recover punitive damages on a tort claim only where the defendant's 'actions amount to gross, wanton, or willful fraud or other morally culpable conduct.'"  (<u>Id.</u> (quoting <u>Int'l Minerals & Res. S.A. v. Am. Gen. Res., Inc.</u>, No. 87 cv 3988 (HB), 2000 WL 97613, *2 (S.D.N.Y. Jan. 27, 2000))  A plaintiff seeking punitive damages must "satisfy a 'very high threshold of moral culpability.'"  (<u>Id.</u> (quoting <u>Brown v. AXA Re</u>, No. 02cv10138 (LTS) (AJP), 2004 U.S. Dist. LEXIS 7624, at *27 (S.D.N.Y. May 3, 2004)))

Judge Freeman notes that Plaintiff allege that he was subject to "false accusations about his job performance" and "was improperly terminated under the Employment Agreement, and that he is therefore owed money."  (<u>Id.</u> at 27)  Judge Freeman concludes that this type of conduct did not warrant punitive damages, and recommends that Plaintiff's punitive damages claim be dismissed with prejudice.  (<u>Id.</u> at 27-28)

**DISCUSSION**

I.      **LEGAL STANDARDS**

      A.      **Review of Report and Recommendation**

            In reviewing a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a timely objection has been made to an R&R, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. A party, however, "generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object." DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); see also Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.").

            Here, despite clear warning that the failure to file timely objections would result in a waiver of judicial review (R&R (Dkt. No. 48) at 28), the parties have not objected to Judge Freeman's R&R. Accordingly, they have waived judicial review. See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report."). However, because a failure to file timely objections does not affect a district judge's jurisdiction and "may be excused in the interests of justice," DeLeon, 234 F.3d at 86 (citing Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)), this Court will consider whether there is any "'clear

14

error on the face of the record'" that precludes acceptance of the magistrate judge's recommendation. Wingate v. Bloomberg, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note); see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.").

### B.    Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

Allegations that "are no more than conclusions[] are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) (citing <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)). And "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." <u>Id.</u> (quoting <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006)). "On a motion to dismiss for breach of contract, courts look . . . at the contract itself, which by definition is integral to the complaint." <u>Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG</u>, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing <u>Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n</u>, 655 F.3d 136, 141 (2d Cir. 2011)).

## II.   ANALYSIS

### A.   Contract Claim Against the Major LLCs

As to Plaintiff's contract claim against the Major LLCs, Defendants argue that the claim must be dismissed, because the Amended Complaint does not allege that the Major LLCs were involved in the alleged breach. This argument fails, given that Kroeker – who identified himself as the Major LLCs' "President and CEO" – allegedly sent Plaintiff a notice of termination on the letterhead of the Major LLCs. (Am. Cmplt. (Dkt. No. 37) ¶¶ 58-59)

The Amended Complaint's allegations plausibly suggest that the Major LLCs were involved in the alleged breach of the Employment Agreement. Defendants' motion to dismiss the breach of contract claim against the Major LLCs will therefore be denied. <u>See Minskoff v. Am. Exp. Travel Related Servs. Co.</u>, 98 F.3d 703, 708 (2d Cir. 1996) ("The existence of apparent authority is normally a question of fact. . . .").

## B.    Contract Claim Against the Spark Entities

As to Plaintiff's breach of contract claim against Spark Energy and HoldCo, these entities were not parties to the Employment Agreement.  "Generally, 'a non-party to a contract is not bound by the contract.'"  Eldesouky v. Aziz, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *12 (S.D.N.Y. Dec. 19, 2014) (quoting Javier v. Beck, No. 13–CV–2926 (WHP), 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014)).  As Judge Freeman notes, there are exceptions to this rule, but the Amended Complaint does not plead facts sufficient to support the application of such exceptions.  (R&R (Dkt. No. 49) at 17)  For example, Plaintiff has not pled facts demonstrating that the Spark Entities exercised complete domination over the Major LLCs for purposes of the breach.  (Id. at 18)  And although Plaintiff seeks to hold the Spark Entities liable as successors to the Major LLCs (see Pltf. Opp. (Dkt. No. 44) at 18-20), the Amended Complaint does not allege that the Spark Entities expressly assumed the Major LLCs' obligations under the Employment Agreement.  The absence of such allegations is fatal to Plaintiff's argument.[7] (R&R (Dkt. No. 49) at 19-20) see GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc., 198 F.R.D. 402, 407 (S.D.N.Y. 2001) ("'Under New York law, the assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless [it] expressly assumes to do so.'") (quoting A. Brod, Inc. v. SK & I Co., L.L.C., 998 F. Supp. 314, 321 (S.D.N.Y.1998)).  Given the general rule that non-parties to a contract cannot be liable for

---

[7]  As Judge Freeman notes, rather than alleging that the Spark Entities assumed the Major LLCs' obligations under the Employment Agreement, the Amended Complaint instead claims that – as part of the Second Purchase Agreement – Holdco "'agree[d] that the [Major LLCs]'" would be "'bound'" by the Employment Agreement, and that salary payments under that agreement were to be "'the responsibility of the [Major LLCs].'"  (R&R (Dkt. No. 49) at 20 (quoting Am. Cmplt. (Dkt. No. 37) ¶ 31))

breaching the contract, and given that no exception to this rule applies, the breach of contract claim against the Spark Entities will be dismissed.

### C.     Tortious Interference Claim Against the Spark Entities

Judge Freeman rejected the Spark Entities' arguments that Plaintiff's tortious interference claims against them should be dismissed as (1) duplicative of Plaintiff's contract claim, and (2) violative of the rule that a party cannot tortiously interfere with its own contract. (R&R (Dkt. No. 49) at 21)  Given that the Amended Complaint does not state a plausible breach of contract claim against the Spark Entities, Plaintiff's tortious interference claim against them will not be dismissed as duplicative.  Moreover, because the Spark Entities were not parties to the Employment Agreement, the rule that a party cannot tortiously interfere with its own contract is not applicable.  See Maricultura Del Norte, S. de R.L. de C.v. v. WorldBusiness Capital, Inc., No. 14 CIV. 10143 (CM), 2016 WL 9735720, at *6 (S.D.N.Y. Dec. 7, 2016), aff'd sub nom. 769 F. App'x 44 (2d Cir. 2019) ("[A] non-party to a contract can [tortiously] interfere with a contract between two other parties.").

Judge Freeman also correctly found that the Amended Complaint's allegations state a plausible tortious interference claim.  Plaintiff alleges that Spark Energy officers – with knowledge of the Employment Agreement – levelled false charges against Plaintiff and thereby caused the Major LLCs to breach their contractual obligations to Plaintiff.  (Am. Cmplt. (Dkt. No. 37) ¶¶ 30-31, 47-48, 57-60, 64)  Given that Spark Energy was HoldCo's managing member, and given that HoldCo assumed all obligations toward Plaintiff when it purported to purchase the Major LLCs' membership interests in 2016 (see supra n.6), it is plausible that the Spark Energy officers were acting on behalf of HoldCo and that their actions will be binding on it.  (R&R (Dkt. No. 49) at 23-24)

Finally, Defendants maintain that the Spark Entities are parents of the Major LLCs and, as such, cannot be liable for tortiously interfering with their subsidiaries' contracts. (Def. Br. (Dkt. No. 41) at 13; Def. Reply (Dkt. No. 46) at 10) see Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02 CIV. 4635 (RPP), 2003 WL 1961636, at *5 (S.D.N.Y. Apr. 25, 2003) ("corporate parent has the right to interfere with the contract of its subsidiary") (citation omitted). Plaintiff has challenged the validity of the purchase agreement by which the Spark Entities acquired an interest in the Major LLCs, however. (Am. Cmplt. (Dkt. No. 37) ¶ 32) At the pleading stage, the Court must credit this allegation. See U.S. Commodity Futures Trading Comm'n v. LaMarco, No. 217 Civ. 4087 (ADS) (AKT), 2019 WL 4247632, at *3 (E.D.N.Y. Sept. 5, 2019) ("[R]esolving factual disputes is precisely what this Court cannot do on a motion to dismiss; instead, a district court must credit the facts in the plaintiff's well-pleaded complaint as true and draw all plausible inferences in the plaintiff's favor at this procedural stage.") (citation and internal quotation marks omitted). For these reasons, the Spark Entities' motion to dismiss Plaintiff's tortious interference claim will be denied.

**D.** **Punitive Damages**

Judge Freeman recommends that Plaintiff's punitive damages claim be dismissed, because the Amended Complaint does not contain allegations demonstrating conduct that is "'gross' and 'morally reprehensible' and 'of such wanton dishonesty as to imply a criminal indifference to civil obligations.'" NYU v. Continental Insurance Company, 87 N.Y.2d 308, 316-17 (1995) (quoting Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 614 (1994)).

This Court finds "clear error" in Judge Freeman's R&R on this point. A punitive damages claim is not a cause of action but instead is a form of relief. As such, a motion to

dismiss is premature.  Jones v. City of New York, No. 18-CV-1937 (VSB), 2020 WL 1644009, at *17 (S.D.N.Y. Apr. 2, 2020) ("'Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is "procedurally premature."'") (quoting Farina v. Metro. Transp. Auth., 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019)); Grimes-Jenkins v. Consol. Edison Co. of New York, Inc., No. 16 CIV 4897 (AT) (JCF), 2017 WL 2258374, at *1 n.3 (S.D.N.Y. May 22, 2017), report and recommendation adopted, 2017 WL 2709747 (S.D.N.Y. June 22, 2017) ("'Punitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss stage to be premature.'") (quoting Denis v. Home Depot, U.S.A., Inc., No. 10 CV 3227, 2014 WL 6632486, at *6 (E.D.N.Y. Nov. 21, 2014)).

Accordingly, Defendants' motion to dismiss Plaintiff's punitive damages claim will be denied.  See Raedle v. Credit Agricole Indosuez, No. 04 CIV. 2235 (TPG), 2010 WL 1506731, at *2 (S.D.N.Y. Apr. 14, 2010) ("Courts in the Second Circuit have held that punitive damages are available in actions for tortious interference with prospective employment where the defendant's conduct is highly egregious and borders on the criminal.") (footnote omitted).

### E.    Leave to Replead

Judge Freeman recommends that this Court grant Plaintiff leave to replead his breach of contract claim against the Spark Entities.  "[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint."  Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party."  Jin v. Metro. Life Ins.

Co., 310 F.3d 84, 101 (2d Cir. 2002) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Koehler v. Bank of Berm. (N.Y.) Ltd.</u>, 209 F.3d 130, 138 (2d Cir. 2000)). "'[W]here it appears that granting leave to amend [would be futile or] is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'" <u>See</u> <u>Lucente v. Int'l Bus. Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (quoting <u>Ruffolo v. Oppenheimer & Co.</u>, 987 F.2d 129, 131 (2d Cir. 1993)).

This Court cannot find, on the present record, that it is impossible for Plaintiff to plead a plausible breach of contract claim against the Spark Entities. For example, Plaintiff could potentially allege facts showing that the Spark Entities exerted "complete domination" over the Major LLCs. <u>See</u> <u>IMG Fragrance Brands</u>, 679 F. Supp. 2d at 404.

## CONCLUSION

Judge Freeman's R&R (Dkt. No. 49) is adopted as set forth above. Defendants' motion to dismiss (Dkt. No. 40) is granted to the extent that Plaintiff's breach of contract claim against Defendants Spark Energy and HoldCo is dismissed with leave to amend. The motion is otherwise denied. Any second amended complaint must be filed by **April 28, 2020**.

Dated: New York, New York
     April 14, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge